OPINION
{¶ 1} Defendant, April Evans, appeals from her conviction for murder, R.C. 2903.02(A), and the sentence imposed for that offense pursuant to law.
 {¶ 2} Defendant and her boyfriend, William Stone, lived together in an apartment on Race Street in Springfield. For *Page 2 
some weeks, the two had engaged in angry exchanges about William Stone's relationships with other women. In the early morning hours of October 16, 2005, after both had been drinking heavily, they argued about Stone's affair with another woman. Defendant called her cousin, Wendy Campbell, to come to the apartment to pick her up.
 {¶ 3} After leaving the apartment, Defendant went back inside to get a bag of clothes she had packed. Campbell and other witnesses heard screaming coming from the apartment, followed by a loud thud. When Campbell went inside, she found William Stone on the floor. Defendant was standing by Stone, holding a knife. Defendant had apparently stabbed Stone in the chest. She said several times: "I don't know what happened. I'm sorry. I love him."
 {¶ 4} Police were called and arrived at about 3:22 a.m. When they asked Defendant what had happened to Stone, Defendant replied: "I did it but it was an accident." Police found a steak knife with blood on it near Stone's body.
 {¶ 5} After being taken to police headquarters, Defendant gave a videotaped statement. She acknowledged that she must have stabbed Stone, but claimed she didn't remember doing it and denied intentionally stabbing him or wanting to kill him. An autopsy determined that Stone died from a five to six inch *Page 3 
deep stab wound to his chest that penetrated his heart.
 {¶ 6} Defendant was charged by indictment with murder, R.C.2903.02(A), purposely causing the death of another, and felony murder, R.C. 2903.02(B). Defendant was found guilty of both charges following a jury trial. The trial court required the State to elect on which of the two verdicts it would proceed. R.C. 2941.25(A). The State elected to proceed on the guilty verdict on the murder charge, and the court entered a judgment of conviction for that offense. The trial court sentenced Defendant to a prison term of from fifteen years to life. Defendant filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 7} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED THE PROSECUTION TO PRODUCE HEARSAY TESTIMONY THAT APPELLANT HAD THREATENED TO KILL A WOMAN (AND HER SON) WHO HAD BEEN SEEING MR. STONE."
 {¶ 8} Paul Stone, father of the victim, William Stone, was called by the State as its witness. Paul Stone testified that several days prior to his son's death, and out of a concern for his son's safety, Paul Stone told William Stone that another woman whom William Stone had been seeing told Paul Stone that Defendant had threatened to kill the woman as well as the woman's child. The Defendant was present when *Page 4 
Paul Stone related the alleged threat to his son, but Defendant neither objected nor disputed the truth of the matter.
 {¶ 9} Hearsay evidence is a statement made by a declarant out of court which is offered in evidence to prove the truth of the matter asserted. Evid.R. 801(B). The State argues that Paul Stone's testimony is not hearsay, per Evid.R. 801(D)(2), because the Defendant was present when Paul Stone told his son of the Defendant's alleged threat but Defendant failed to dispute it.
 {¶ 10} A party may manifest his adoption of or belief in the truth of an out-of-court declaration made by another, making the declaration the party's admission, and therefore not hearsay. Evid.R. 801(D)(2)(b). The rule has been applied when a party was present but remained silent when the declaration was made. State v. Matthews (1976), 47 Ohio St.2d 119.
 {¶ 11} The hearsay to which Paul Stone testified was not his own rendition of Defendant's alleged threat but the declaration of the other woman that Paul Stone repeated. Defendant was not present when the woman made the alleged declaration concerning Defendant's threat to kill her and her child. Therefore, the adoptive admission rule does not apply. *Page 5 
 {¶ 12} The State's theory was that Defendant was so intensely jealous and possessive of William Stone that she purposely killed him in order to avoid the loss of his affections to another woman. Paul Stone's testimony is probative of that theory, and if it was offered to prove it, Stone's testimony about what he'd heard the other woman say-that Defendant threatened to kill the woman and her child — is hearsay and therefore inadmissible. Evid.R. 801, 802.
 {¶ 13} It's difficult to say that the State offered Paul Stone's testimony for that prohibited purpose, however. Stone's assertion concerning what he'd heard and told his son was volunteered, not given in response to a specific question concerning the conversation. Neither did the prosecutor mention Stone's testimony in his closing argument. Further, Defendant did not promptly object, though her attorney made several objections that Paul Stone's line of testimony was hearsay. The trial court overruled the objections.
 {¶ 14} Though it was but a passing matter, Paul Stone's evidence could be used by the jury to infer that the Defendant, having threatened to kill another person because of her own jealous attitudes, is a violent person who acted purposely in that same vein when she stabbed and killed William Stone. Therefore, the trial court erred when, over *Page 6 
the Defendant's objections, the court admitted Stone's testimony into evidence.
 {¶ 15} Error is harmless and must be disregarded unless it affects a defendant's substantial rights. Crim.R. 52(A). Error in the admission of evidence in a criminal prosecution is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction. In order to hold that the error was harmless, the court must be able to declare a belief that the error was harmless beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18,87 S.Ct. 824, 17 L.Ed.2d 705; State v. Bayless (1976), 48 Ohio St.2d 73.
 {¶ 16} Paul Stone's hearsay evidence no doubt portrayed Defendant as a person who has violent propensities and was intensely jealous of William Stone's affections, which supports the State's theory that she purposely killed him to avoid losing him. However, on the record as a whole, we believe that any error in admitting the evidence was harmless beyond a reasonable doubt in relation to Defendant's conviction for purposely causing the death of William Stone. Our belief is supported by several factors.
 {¶ 17} First, there is no dispute that Defendant stabbed William Stone in the chest with a steak knife, or that the *Page 7 
wound she inflicted that caused his death was from five to six inches deep. Infliction of such a wound requires the use of significant and deliberate force and connotes a purpose to cause serious physical harm and even death.
 {¶ 18} Second, the stabbing occurred when Defendant and the victim broke their relationship, following a loud argument between them in which their tempers were intense. The subject of the argument was the victim's involvement with other women, which had been a source of serious arguments between them for the past several weeks.
 {¶ 19} Third, another witness for the State, Mark Edwards, testified that he witnessed an argument between Defendant and William Stone at their apartment three nights prior to the stabbing. Edwards further testified that Defendant told him, concerning Stone: "If this relationship does not get better between both of us, . . . I (will) kill him and you will see it on NewsCenter 7." (T. 744).
 {¶ 20} The foregoing evidence, if believed, supports a conclusion that Defendant acted purposely to cause the death of William Stone when she stabbed him, and is so overwhelmingly convincing of that proposition that any error in the admission of Paul Stone's hearsay testimony is harmless beyond a reasonable doubt. *Page 8 
 {¶ 21} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 22} "APPELLANT'S CONVICTION FOR MURDER UNDER R.C. 2903.02(A) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
THIRD ASSIGNMENT OF ERROR
 {¶ 23} "THE EVIDENCE PRESENTED IS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR MURDER UNDER R.C. 2903.02(A)."
 {¶ 24} In these related assignments of error Defendant argues that her conviction for murder is not supported by legally sufficient evidence and is against the manifest weight of the evidence because the State failed to prove that she "purposely" caused William Stone's death.
 {¶ 25} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 26} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average *Page 9 
mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 27} Defendant was found guilty of purposely causing the death of William Stone. R.C. 2903.02(A). A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature. R.C. 2901.22(A).
 {¶ 28} In arguing that there is insufficient evidence that she had a purpose or intent to kill William Stone, Defendant points out that she and the victim were alone at the time of the stabbing, that immediately prior to the stabbing witnesses heard both parties screaming at each other and Defendant call out, "Don't hit me." Further, immediately after the stabbing Defendant attempted to administer CPR to the victim and yelled for others to help save him and not let him die. Moreover, Defendant made no attempt to flee.
 {¶ 29} On the other hand, there is evidence that amply *Page 10 
demonstrates Defendant's purpose or intent to kill William Stone. Defendant shoved the knife into William Stone's chest with severe force, penetrating five to six inches deep and lacerating his heart. There were no injuries to Defendant and no evidence that she had been attacked by the victim. Furthermore, Defendant and the victim had been arguing for weeks over the victim's cheating on Defendant and his wanting to leave her, and just three days before this stabbing occurred Defendant told Mark Edwards that if her relationship with William Stone did not improve she would kill Stone and Edwards would see it on NewsCenter 7.
 {¶ 30} Viewing the totality of this evidence in a light most favorable to the State, as we must, a rational trier of fact could find beyond a reasonable doubt that Defendant purposely caused William Stone's death. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 31} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172, 175: *Page 11 
 {¶ 32} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, supra.
 {¶ 33} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 34} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 35} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility *Page 12 
unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 36} In addition to the evidence we have already discussed, the evidence presented by the State included incidents in which Defendant tried to choke William Stone, slapped him in the face, and damaged the distributor wires on William Stone's truck. The trier of fact in this case, the jury, did not lose its way simply because it chose to believe the State's version of the events, that Defendant murdered William Stone because of jealousy. The credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts to decide. DeHass.
 {¶ 37} Reviewing the entire record we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 38} Defendant's second and third assignments of error are overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 39} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HER LAWYER FAILED TO MOVE TO DISMISS THE SECOND *Page 13 
MURDER INDICTMENT ON GROUNDS OF A SPEEDY TRIAL VIOLATION."
 {¶ 40} Defendant complains that his counsel was ineffective for failing to move for her discharge pursuant to R.C. 2945.73(B) with respect to the felony murder offense with which she was charged in a separate indictment, because the State failed to bring Defendant to trial on that charge within the time prescribed by R.C. 2945.71.
 {¶ 41} Counsel will not be deemed to have provided ineffective assistance unless and until counsel's performance is shown to have fallen below an objective standard of reasonable representation and, in addition, the defendant asserting the claim was prejudiced as a result.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136. The threshold inquiry is not whether counsel's performance was sufficient, but whether prejudice resulted from it. Strickland.
 {¶ 42} We find that Defendant was not prejudiced by the failure alleged. The jury returned guilty verdicts on both the purposeful murder and felony murder charges, but the court ordered those offenses merged pursuant to R.C. 2941.25(A), which provides that in that event "the defendant may be convicted of only one." Upon the State's election, the court *Page 14 
entered a judgment of conviction and sentence on the murder offense. Because Defendant was not convicted or sentenced on the felony murder offense, she has not been prejudiced by her attorney's failure to seek her discharge on that offense for a speedy trial violation.
 {¶ 43} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
 WOLFF, P.J. And BROGAN, J., concur. *Page 1